Good morning, Your Honors. May it please the court, Zulu Ali on behalf of the appellant, Sury Alexander. I submit to the court that this is a case of an individual who had been sent to Patton State Hospital based upon the fact that they were, uh, he was, uh, trying to determine whether he was first of all, whether he was incompetent, and if so, whether, um, you know, the Patton State Hospital would be able to assist with, um, bringing him to competency. Sury Alexander Counsel, let me ask you this. The, um, the district court ruled against your client based solely on the issue of qualified immunity, but on appeal, you only spent one paragraph on that issue, and in that paragraph, you cited one case at a very high level of generality. In short, at least from my point of view, you didn't speak at all meaningfully in the reason for the appeal. Right. Okay. Isn't this a frivolous appeal? And if so, if not, why not? Well, I don't think it's a frivolous appeal, Your Honor, because I think that although we did address the issue of, it was addressed in the, uh, appellate brief. Well, that's what I'm talking about. You just had the one case about qualified immunity, but that was the whole case before the district judge. I understand your underlying arguments and, and, uh, whether your client was properly treated in Young versus Romero and Gordon and so on, but that's not what the district court based the case on. It was qualified immunity. What's your best argument that qualified immunity doesn't control this case? Your Honor, my best argument that qualified immunity does not destroy the case is the fact that, um, of course, for it to be qualified immunity, um, there's as the as the district court advised that there is basically a two prong test as to, um, whether there was a constitutional right that has been violated. And if no such right has been violated, the plaintiff cannot prevail. In this particular case, I believe the issue is, um, the it falls within the context of medical care. It's not really within the context of necessarily his right to be transferred. But But with respect, counsel, in order to avoid qualified immunity, don't you have to cite a case or cases that are says that this is unconstitutional? What was done? The cases that you cited essentially boiled down to a standard of recklessness, which is quite different than a constitutional violation. What am I missing? Well, you know, I believe that the case that we did site was relevant to the issue of whether there was qualified immunity because they all address the of the standard related to medical care. And the way that the court addressed the issue was more or less within the context of transferring, as if that we were solely arguing the issue as to necessarily the right to transfer without that being addressed within the context of of of medical care, which is obviously a constitutional right. And so I'm not quite sure why the court basically addressed the issue solely from whether we establish whether there was a right to be transferred to a different unit. I don't believe that that was really the context in which I thought that that thought that was your claim, Mr Ali, that that you that it was a deliberate or at least reckless indifference to your client's safety in failing to separate the two patients after the first attack, right? That that is correct. And so then we have the defense submitted the opinion of Dr Tyler about the kinds of factors that go into those decisions in the state hospitals in California. Right. And what did you offer to rebut that opinion? Well, the well, the opinion that there are certain factors I didn't. I don't disagree with the fact that there were the factor that those factors existed. Our argument was that they established what those factors are. But there there was a tribal issue as to those factors. In other words, they're part of those part of the, um, one of the factors was that they were to inquire with the patient to make a determination as to whether they felt safe. However, the issue was that they also stated, or at least the record was clear that, uh, Mr Alexander was non auditory. And so, based upon the fact that Mr, uh, Alexander was non auditory, then there was no way that they would have met those patient to patient violence standard in light of the fact that, based upon their own admission, Mr Alexander was non auditory. So when you say not auditory, I thought, did they try to determine his preferences or not that they alleged that they did? In other words, they stated that there was some sort of attempt to make a determination as to whether he was whether he would feel safer. He wanted to go back into the unit. However, there was also evidence that was submitted that he was suffering from. I believe it's aphasia. I might be mispronouncing it. And the issue is that if he was suffering from an aphasia and also statements that he was non auditory, then if he was not auditory, there was no way that he was able to establish that he was going to go back into the unit, which I believe is, uh, which I believe. So with a let's put yourself in the position of the medical staff at the hospital. You've got a You've got a patient who's been the subject of an assault who has aphasia and has difficulty communicating. What are they supposed to do? Well, I mean, I think that, um, and I don't know because the standard doesn't doesn't set forth that alternative. There is no alternative. And I think that that that that creates the issue. I think that that makes it, I believe, creates the issue of a tribal issue to defeat qualified to defeat qualified immunity. You have to either have, as my colleagues said, a case on point, or you have to have a situation in which what the Constitution requires to be is so obvious that every reasonable official would know what to do. So saying there was a tribal issue as to what was the right thing to do seems completely inconsistent with claiming qualified immunity because it has to be a case that's absolutely clear cut. You couldn't do this once you've established what the relevant facts historically happened. It has to be really clear what the right judgment is. How is that this case? It seems you're not. I'm saying that is that your case, Your Honor. What I'm saying is that I think that the, um, when we clearly there is a constitutional right to adequate medical care. I mean, I don't think that there's no question about respect. Council, you're at 30,000 feet when you say that, as as we've all indicated to you. And when you talk about qualified immunity, you've got to have a case or cases that deals with the roughly the factual simulation similar situation that your client found himself in. What you seem to be alleging is that there was recklessness on the part of the medical staff. And that without qualified immunity, that may very well be the case. I don't know. But that, but if you have qualified immunity, you never get there. So what case would you cite that would overcome your problem on the qualified immunity sector? Well, Your Honor, I don't believe, at least from our perspective, I don't know if there is a case specifically on qualified immunity as to this particular scenario. Then don't you lose? But I don't believe so, Your Honor. And the reason why I don't believe that we lose on that issue is that whenever, for example, there's a there's a situation, and I think in many of these cases, there is clearly an established rule as to adequate medical care. And I don't believe that every constitutional rule it is. I think there is a constitutional rule, and I think it began with even back all the way into the Supreme Court. And, um, uh, there's a there's a case, I believe, in 19 beginning in 1976. Estelle versus Gamble 4 29 U. S. 97 103 says that the government's obligation, uh, to provide medical care for those whom is punishing by incarceration. I believe that on that reasoning, it held that deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment's prohibition on if you don't have a case on point, then what you have to do is show that your case is obvious, and the standard you're relying on is Gordon. And so what that would mean is that you'd have to show that this was a case in which every reasonable official would have understood that how they were proceeding created a high degree of risk involved, making the consequences of their conduct obvious. And that's the high standard you would have to meet. How? How do you meet that? I believe that it does make it obvious. I think that the disconnect, at least from my perspective, Your Honor, is that there there tends to be a somewhat of a, um, the it's being more around the issue of him having the mental issue as opposed to having a medical issue. For example, if it was a medic, clearly a medical issue, and when I say medical from the perspective that he was seeking some sort of medical treatment, then I think that we would clearly have a different conversation. However, I believe what the disconnect is, is I do not. I believe that mental issues are mental treatment, and medical treatment falls within the same context. And I think that that's where the disconnect is, is that people presume that him not being transferred and they when they state the criteria, they specifically talk about patient to patient issues relative to patient to patient violence. You want to save any of your time for rebuttal entirely up to you, but would you like to do that? I'll save some of my time, Your Honor. Very well. Okay, let's hear then from the government. Good morning, Your Honors. May it please the court. Deputy Attorney General Thomas McMahon on behalf of Defendant and Appellee Dow V. Nguyen, MD. Your Honors, this is a case where the facts are simple. They are mostly undisputed, and they warrant an affirmance of the District Court's summary judgment for Dr. Nguyen. I'd like to address the qualified immunity point that Your Honors put in your questions. And it is true that there has to be clear and specific precedent for the type of conduct at issue in this case. And the plaintiff has only cited the case of Gordon versus Orange County. And we submit that for three reasons, that is not sufficient precedent under the qualified immunity test. The first reason is that Gordon was decided in the year 2018. The conduct by Dr. Nguyen at issue here was in April and May of 2017. Therefore, it does not constitute precedent at all. Further, the holding in Gordon was not an application of a 14th Amendment standard to a set of facts. Rather, the Court of Appeal ruled that the District Court had applied an incorrect standard, an eighth amendment, deliberate indifference standard. And the case was reversed and remanded so that the District Court could apply the correct legal standard to the facts. So there really isn't a holding applying law to fact in Gordon such that it could be precedent here in this case. And finally, Your Honors, the factual situation in Gordon was completely distinguishable from this situation. It was a criminal detainee rather than a patient at a hospital. But more importantly, it was a deprivation of medical care despite a serious medical condition. That's not what this is. This is not a medical treatment case. The plaintiff was treated for the blow to his head that he did receive both on the first incident and the second incident. But this isn't a case about whether that medical care was sufficient or not. The sole grounds for the 14th Amendment claim in the pleading and in the briefs has been that there was not a movement of the medical decision. That is, in its essence, an administrative decision. And that's what leads to the professional judgment standard being applied here as opposed to any deliberate indifference standard. Let me ask you this, Counselor. Putting aside arguendo, the qualified immunity matter, there are two different cases we're looking at, Gordon, which you've distinguished, and also Youngberg v. Romero. They seem to me to roughly boil down to a recklessness inquiry. Would you agree with that? Your Honor, I think that in this situation where we're dealing with the 14th Amendment, substantive due process of law, and we're dealing with an administrative rather than a medical decision, I believe that it's the professional judgment standard that applies. And that when you apply that conscious disregard or recklessness, and that is more than mere negligence. And so I think what's important to bear in mind here is that the plaintiff has not established that there's a triable issue of fact on either negligence, which isn't enough, or on that heightened standard of conscious disregard or recklessness. With respect to negligence, the professional standard has been established by the defendant staff in their declarations and in Dr. Tyler's declaration, and it's not even disputed by the plaintiff as to what that standard is. You weigh certain factors, and those factors are the severity of the assault, whether there were prior incidents, could the two be counseled to avoid further violence, does the victim have a preference, what about the overall well being of the plaintiff, would that be satisfied by a move, and are there other measures, short of moving the patient, that might alleviate the situation. Those were weighed in this case by the professional staff, and Dr. Tyler has opined, uncontradicted by anything in the record, that it met the professional standard. Mr. McMahon, can I ask you, if you ask me to dream up relevant factors, I hope I might reconstruct something that came close to that list, but is there a more authoritative source for that, is it a matter of state policy, or is it more improvised and adapted to the particular circumstances? Your Honor, I tried to determine whether there was anything in writing in terms of a formal procedure along those lines. I was not able to find one, and that is why I asked the professional staff how they handle these situations, and they all concurred on what the factors were, and we put them in our papers, and independently of that, we hired an independent expert on how you handle incidents of violence in a state hospital, and there are some subtle differences, but her declaration lists many of the same factors, and I would point out that the only factor that the plaintiff has talked about is the one about what is the patient's preference, and his assertion is that he could not possibly have been evaluated on that because of his aphasia, and, Your Honor, I think that's incorrect for two reasons. The first reason is that aphasia, as defined in the record of this case, is a difficulty in communicating. It is not an inability to communicate, and that's a very important distinction here. Learned Counsel has referenced that he was non-auditory. That concept, that word, that phrase is nowhere in the record of this case. The only thing that's in the record is that when the patient was admitted at Patton, he was found to have aphasia, and he had some difficulty in communicating. Indeed, that's why he was there, because he couldn't effectively communicate with his counsel in his criminal defense, but that doesn't mean that he wasn't able to communicate, and the record is undisputed that he did communicate to Dr. Nguyen and the rest of the professional staff that he wanted to remain in Unit 72. He did not want to be moved, so that factor was properly weighed. It could be weighed. It was weighed, and I would also point out, that Counsel's argument essentially assumes that the patient's preference was the only factor at issue, and I would submit again that that's not the case here. It was one of many factors. The other factors that I mentioned, the severity of the assault, the prior incidents, the counseling, what about the overall well-being of the patient, what other measures might be done. Those other factors were weighed, and I think we have proof in this record that the patient's preference was not the be-all and end-all of the decision, because after the second incident, the patient continued to say that he did not want to be moved to another unit. That is undisputed in the record, but on that day, they said, well, now we have a second assault from that patient, and we are going to override the patient's preference in this instance, and they did so, and that was reasonable. So I submit, Your Honor, that we have a case here where the qualified immunity has not been established, the second prong of which is clear and specific precedent. Gordon is not that case. Put it this way. If Dr. Nguyen, in thinking about what to do after the first incident of violence, and having in mind what he planned to do, the factors he was going to weigh, and his decision not to move him, if someone had handed him a copy of the Gordon decision and said, read this, and he did so, would it have had any impact on him? Would it have counseled him or guided him and told him, you better not do that. You better move him to another unit. There is not a word. There is not a line. There is no phrase whatsoever in Gordon that would have given him the guidance that qualified immunity is all about. And in addition, we've pointed out that this court can and should affirm on the alternative ground that there wasn't even a constitutional violation. In effect, this is the first prong. I mean, you've made the point that Gordon came after the incident, and Gordon was a significant shift because we used to apply a subjective standard for the pretrial detainees, and then it got revised in the court and became objective. But now we've held in Sandoval that even though it was subjective at the time, we do a qualified immunity inquiry under objective standards. I don't think it makes any sense. I vigorously dissented in Sandoval, but that's what we're stuck with. We're stuck with that even though Gordon is after an objective, and even though the standards were subjective, we view qualified immunity through an objective lens. So viewing it that way would have to be an obvious case situation, but that's the box we're in analytically, I think. I understand, Your Honor. I agree. I think we are having to apply an objective standard. But this is one of the rare cases where the record discloses no triable issue of fact on whether there was a substantive due process. There is no evidence that the professional standard was violated by Doctrine Winn. We provided the evidence of what that standard was, our declarations of the professional staff and independent expert, Dr. Tyler. There was no declaration submitted by the plaintiff to contradict that standard. Our declarants also analyzed the facts, applied it to the standard, and said, there is no violation of the professional standard here. Again, nothing submitted by the patient to contradict that. So you have an uncontradicted record of what the standard was and the fact that it was not violated. And that just establishes that there was no negligence. But that's not enough for the plaintiff in this case. They have to go beyond mere negligence, and they have to show that there was conscious disregard amounting to recklessness. And looking at what Doctrine Winn did here, and how careful he was in considering the factors, and how solicitous he was of the patient, and how he did the right thing after the second incident, and how this patient wanted to come back to Unit 72 at the end of his stay at Patton, and did so, came back to Unit 72, shows you that there was no recklessness, and there was no conscious disregard. And I would submit, Your Honor, on that basis, on either of those two grounds or both, that you should affirm the district court's summary judgment for Doctrine Winn in all respects. Other questions by the McCullough? All right, thank you very much. All right, Mr. Ali, you have a little bit of time for rebuttal, if you'd like to use it. Okay, thank you, Your Honor. With regards to the issue of the Gordon case, Gordon versus the County of Orange, I mean, the case itself is full of established criteria with regards to the constitutional standard, with regards to medical treatment within that particular case, from this particular circuit itself, with regards to the type of medical screening, and what is the medical protocol and a medical appropriate standard. So I do believe dating, you know, back several years, even before Gordon was actually even decided. So I believe that that is not just limited to providing... I thought Gordon was the case that establishes an objective standard for pretrial detainees, and that prior to that, we applied a subjective standard. Am I wrong? You're correct with that, Your Honor, as far as that making the... It doesn't have roots that go back before, because it's a change in the law. It's following Kingsley, and yeah, but it's still very new. And with regards to the issue of, and I completely disagree with regards to the standard and not being a tribal issue as to the standard relative to what was set forth as far as patient-to-patient, you know, violence. I do believe that the record was very clear, at least from the issue where, I believe, a trier of fact could make a determination with regards to whether his choice and determination has to go back into the unit, whether, first of all, it was adequate or whether it was actually done at all. I think from that perspective, there are questions. So, I do believe that there actually is a tribal issue on that issue as well. And again, I do believe that as far as the issue regarding whether there was a, going back to the issue of qualified immunity, my personal belief and I think professional belief as far as looking at what actually transpired in this particular case as to the decision. I do believe that it does, there is a significant issue as regards to differentiating between what was made, what the decision was in this particular case, and not just putting it within a box of whether the transfer was the issue. I think there was an issue with regards to the medical treatment that was provided to the appellant in this particular case. And I would ask... I'd like to ask you, what is Mr. Alexander's current status in terms of health, in terms of the criminal prosecution, and so on? Well, he's beyond the criminal prosecution that is finished. However, as far as his health, he does not communicate well. Definitely difficulty communicating and I'd have no idea how he was able to communicate. He was deposed and I have no idea how he was able to communicate, at least at that particular time, with regards to being transferred. Very well. Other questions? All right. Very well. Thanks to both counsel for their argument. The case just argued is submitted and the court stands adjourned for the day. Just as a note, we know we have a magistrate judge here with some of her clerks and our clerks are going to visit with you after we finish our conference. We'll come out and visit with you briefly as well. So I hope you'll be patient. All rise. This court for this session stands adjourned.
judges: SMITH, Hamilton, COLLINS